UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80050-CR-MARRA/VITUNAC

UNITED STATES OF AMERICA,

v.

JEANNE B. LECLERCQ,

DEFENDANT.
_____/

ORDER DENYING MOTION TO AMEND RELEASE ORDER
AND ORDER OF DETENTION

This matter came before the Court on the motion of Defendant, Jeanne B. LeClercq,

seeking to modify or amend the conditions of the release order entered by a Magistrate Judge in

the Middle District of Florida. [DE 70] An evidentiary hearing was held before the Court on the

motion.  Additionally, the Court reviewed the record before the Magistrate Judge who

determined the conditions of Defendant's release. Upon consideration of the record evidence, the

argument of counsel and otherwise being fully advised in the premises, it is hereby ORDERED

AND ADJUDGED as follows:

*PROCEDURAL BACKGROUND*

An indictment was returned by the grand jury against Defendant and her Co-defendant,

Frederick J. Shapiro, alleging that the defendants conspired to commit mail and wire fraud in

violation of 18 U.S.C. § 371; that they committed eleven counts of mail fraud in violation of 18

U.S.C. § 1341 and 2; two counts of wire fraud in violation of 18 U.S.C. § 1343 and 2; four

counts of promotion money laundering in violation of 1956(a)(1)(A)(i) and 2 and four counts of

expenditure money laundering in violation of 18 U.S.C. § 1957 and 2.  The charges stem from Defendant's alleged involvement in a business known as Starcash, Inc. ("Starcash").  It is alleged that Defendant was the president and chief executive officer of Starcash.  It is further alleged that the defendants solicited investors in the business through the use of the mail and interstate telecommunication facilities by making false and fraudulent misrepresentations and omissions of material facts.

Of particular note for purposes of the present motion, it is alleged that the promotional material used by Defendant in connection with Starcash failed to disclose that Defendant was on probation for having committed a felony offense and that six states and one Canadian province had issued cease and desist orders prohibiting Starcash and Defendant from continuing to raise money in those locations.  Orders from five of the states included findings that Starcash had engaged in fraudulent solicitations of individuals residing in the respective states.  Furthermore, a final judgment was entered against Starcash and Defendant in a civil enforcement action brought by the Securities and Exchange Commission wherein Defendant was ordered to disgorge the principal amount of $6,729,584.00 as a result of her activities with Starcash.  *Securities and Exchange Commission v. Starcash, Inc., et al.,* Case No. 02-80456-Civ- Middlebrooks, (S.D. Fla. 2003).[1]

Defendant was arrested in the Middle District of Florida.  Defendant had an initial appearance before a Magistrate Judge in that district.  The Magistrate Judge considered conditions of pretrial release and initially set the financial conditions of release at $500,000.00

---

[1]     A district court may take judicial notice of its own records.  *See Universal Express, Inc. v. United States Securities and Exchange Comm'n,* 2006 WL 1004381 *2 (11th Cir. April 18, 2006), *citing Stahl v. U.S. Dep't of Agri.,* 327 F.3d 697, 700 (8th Cir. 2003).

partially secured with $15,000.00 in cash with a *Nebbia* condition to be co-signed by Defendant's mother.[2]  At the *Nebbia* hearing to determine whether the $15,000.00 security was not derived from the alleged criminal activity, Defendant presented the testimony of Steven Curtis.  Mr. Curtis knew Defendant for seven of eight months based upon his dating of Defendant's daughter.[3]  Mr. Curtis testified that he was a 21 year old high school graduate who owned and operated a plastic surgery center. He further testified that the money that was posted to secure Defendant's bond came from the proceeds of that business.  During a thorough cross-examination by the government's attorney, quite amazingly, as was the case with Defendant's daughter, the Magistrate Judge felt the need to advise the witness of his right against self-incrimination.  The government established that Defendant had operated four plastic surgery related businesses that were in bankruptcy.  The Magistrate Judge concluded that Defendant and her daughter were involved in continuous fraudulent activity and that Mr. Curtis was either completely lying or was placed in charge of the plastic surgery center as a straw man for Defendant and her daughter.  At the conclusion of the hearing, the Magistrate Judge amended his earlier ruling and required Defendant to post a fully secured bond in the amount of $500,000.00.

Defendant has moved the Court to modify the bond.  Defendant has been in custody for

---

[2]     The non-financial conditions of release, which are not at issue in this proceeding, included: pretrial supervision, travel restricted to the Middle and Southern Districts of Florida, maintain or actively seek employment, maintain a residence as reported to pretrial services, abide by all court orders in the pending state case and bankruptcy proceedings, surrender her passport and obtain permission for any new credit.

[3]     At the initial appearance, Defendant presented the testimony of her daughter, who was convicted with Defendant in the operation of another of Defendant's businesses.  The testimony of Defendant's daughter was so incredible that the Magistrate Judge felt obligated to advise her of her right against self-incrimination.  Shortly thereafter, Defendant's counsel asked to withdraw the daughter's testimony.  The Magistrate Judge then struck the testimony.

over six months and it appears she cannot meet the financial conditions imposed by the

Magistrate Judge.  The United States opposed the motion.  An evidentiary hearing was held

before this Court on Defendant's motion.  Defendant presented the testimony of Joyce Quick,

Defendant's sister, and Jonathan Bennett, the co-owner of a cosmetic surgery center.  Ms. Quick

testified she would guarantee Defendant's appearance if she was released on bond.  She also

testified that she worked for Defendant in the business for which Defendant and her daughter

were convicted, and she worked for Defendant in the business which is the basis for the

indictment in this case.  Mr. Bennett testified that his cosmetic surgery business would employ

Defendant as a patient coordinator if she was released on bond.  Mr. Bennett also testified that he

employs Defendant's daughter, and that his business partner was an employee of Defendant's in

one of her failed cosmetic surgery related businesses.

### DISCUSSION

### A.  Applicable Law.

Pursuant to the 18 U.S.C. § 3142(c), Defendant was granted release on conditions.

Defendant cannot meet the financial conditions of the bond, and now seeks modification of the

conditions originally set by the Magistrate Judge.[4]  Section 3142(c)(2) of Title 18 provides that

---

[4]     Section 3142(c)(3) of Title 18 provides that "[t]he judicial officer may at any time amend his order to impose additional or different conditions of release."  Additionally, 18 U.S.C. § 3145(a) provides that "[i]f a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense . . . (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of conditions of release."   The government incorrectly asserts that Defendant is not entitled to modified conditions unless she can demonstrate "information exists that was not known to the movant at the time of the hearing."  18 U.S.C. § 3142(f)(2)(B).  This provision, however, is contained in the subsection of the statute relating to detention hearings and only applies in connection with an order of detention.  *See United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir. 1985)( when considering modification or revocation of a release order, the reviewing court

4

"[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  It has been recognized, however, that the setting of financial conditions which the defendant cannot meet does not always contravene the statute.  *United States v. Wong-Alvarez,* 779 F.2d 583, 584(11th Cir. 1985); *accord United States v. Fidler,* 419 F.3d 1026, 1028 (9th Cir. 2005); *United States v. Mantecon-Zayas,* 949 F.2d 548, 550 (1st Cir. 1991); *United States v. McConnell,* 842 F.2d 105-108-09 (5th Cir. 1988); *Westbrook*, 780 F.2d at 1188-89; *United States v. Jessup,* 757 F.2d 378, 388-89 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990).  The *de facto* detention of a defendant under these circumstances does not violate § 3142(c)(2) "if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community." *Fidler,* 419 F.3d at 1028.  This is because under such circumstances, the defendant's detention is "not because he cannot raise the money, but because without the money, the risk of flight is too great." *Jessup,* 757 F.2d at 389. Thus, "the statute does not require that a defendant be able to post the bail 'readily'". *United States v. Szott,* 768 F.2d 159, 160 (7th Cir. 1985)..  "The purpose of bail is not served unless losing the sum would be a deeply felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee.  This implies that a court must be able to induce a defendant to go to great lengths to raise the funds without violating the condition in § 3142(c) that bail may not be used to deny release altogether." *Id.*

---

may conduct a *de novo* review of the same facts and considerations that impelled the original magistrate's order); *accord United States v. Westbrook,* 780 F.2d 1185, 1188 n.4 (5th Cir. 1986).

If after being advised by a defendant that she cannot meet the financial conditions imposed by a release order the district court nonetheless determines that the bail is reasonably necessary to ensure the defendant's presence at trial, the district court can proceed to make the requisite findings and issue a detention order.  *Mantecon-Zayas,* 949 F.2d at 550-51; *McConnell,* 842 F.2d at 110; *see Wong-Alvarez,* 779 F.2d at 585.  A finding that a defendant is *either* a flight risk *or* a danger to the community is sufficient to justify pretrial detention.  *United States v. King,* 849 F.2d 485, 488 (11th Cir. 1988).  A preponderance of the evidence standard applies to the determination of whether a defendant poses a high risk of flight.  *King,* 849 F.2d at 489; *Medina,* 775 F.2d at 1402.  A clear and convincing evidence standard applies to the determination of whether a defendant is a danger to the community.  *King,* 849 F.2d at 488; 18 U.S.C. § 3142(f).

**B.  The Financial Conditions of Bond Are Necessary to Ensure Defendant's Presence at Trial and to the Extent Such Conditions Result in Defendant Being Detained, Defendant is a Flight Risk.**

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court is required to consider: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the person; 3) the history and characteristics of the person and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  As to the first factor, the charges against Defendant are serious.  The government contends that the amount of loss in the alleged scheme is in excess of $7,000,000.00.  There has already been a civil finding of liability in excess of $6,700,000.00, which gives the government's estimate credence.  The conspiracy, mail and wire fraud charges each carry five year statutory maximums, and the promotion and expenditure money laundering

6

charges carry twenty and ten year statutory maximums respectively.  The government estimates that if Defendant is convicted she faces an advisory guideline range of 360 months to life.   The substantial prison sentence Defendant faces renders a significant monetary bond necessary to ensure Defendant's presence at trial.

As to the second factor, there is substantial evidence to support the charges brought against Defendant in this case.  The civil finding of liability for fraud, while not sufficient to support a verdict in a criminal case, weighs heavily against Defendant.   The Defendant's alleged failure to disclose to prospective investors her criminal record and numerous cease and desist orders entered against her, which is easily provable, is almost prima facie fraudulent.  The weight of the evidence also justifies a significant monetary bond to ensure Defendant's presence at trial.

Defendant's history and characteristics also weigh in favor of a significant monetary bond to ensure Defendant's presence at trial.   Defendant is a convicted felon and was on probation at the time of the alleged offenses.  Moreover, as previously indicated, Defendant has been found civilly liable for fraud arising out of the business in question and she has had numerous cease and desist orders entered against her by governmental authorities.

Lastly, a significant monetary bond is necessary to protect the community from additional economic harm.[5]  Defendant poses a danger to the community if she is released.  Defendant has involved her own daughter in a prior criminal enterprise, and she recently has been involved in failed businesses of questionable legitimacy.  Furthermore,  Defendant seeks to be released to the

---

[5]    The reference to safety of the community in the Bail Reform Act of 1984 "refers to the danger that the defendant might engage in criminal activity to the detriment of the community.  The [Senate Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."  *King,* 849 F.2d at 487 n.2.

same environment from which she came before her arrest.  Defendant wants to live with her sister who worked for Defendant in the criminal enterprise for which Defendant and her daughter were convicted and who worked for Defendant in the business which is subject of the offenses charged in this case.  Defendant also seeks to work for a cosmetic surgery business with which her daughter is affiliated, the same type of business that Defendant ran and resulted in four bankruptcies.

Based upon the seriousness of the offenses with which Defendant is charged, the substantial evidence supporting the charge, the significant prison sentence Defendant faces if convicted, Defendant's criminal history and other suspicious business activities, the Court finds, by a preponderance of the evidence, that Defendant has no incentive to appear for trial if released from custody and therefore is a flight risk.  Hence, the significant monetary imposed by the Magistrate Judge was necessary to ensure Defendant's appearance at trial.  Because it appears that Defendant cannot meet those monetary conditions, the Court's order effectively results in Defendant's detention. Since the Court finds that Defendant is a flight risk, Defendant, Jeanne B. LeClercq, is hereby detained pending further order of this Court because no condition or combination of conditions will reasonably assure Defendant's appearance as required.

Defendant is hereby committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

While in the custody of the Attorney General, Defendant shall be afforded reasonable opportunity for consultation with counsel.

On order of a court of the United States or on request of an attorney for the Government,

8

the person in charge of the corrections facility at which Defendant is confined shall deliver

Defendant to a United States marshal for the purpose of an appearance in connection with a court

proceeding.

Done and ordered in Chambers in West Palm Beach, Palm Beach County, Florida, this

13th day of December, 2007.


KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE