## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80050-Cr-Marra/Vitunac (s)

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JEANNE B. LECLERCQ,

          Defendant.

_____/



FILED by _____ D.C.

AUG 2 0 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Order of Reference (DE 133) dated June 20, 2008, from United States District Judge Kenneth A. Marra for a Report and Recommendation "to determine the appropriateness of attorney fees requested" by Criminal Justice Act ("CJA") counsel David Joffe for services rendered in this case to Defendant Jeanne B. LeClercq. On July 8, 2008, this Court met with counsel, *ex parte*, regarding the nature of the case and the fees requested. Joffe supplemented his responses to the Court's inquiries telephonically on July 17 and 18, 2008. The Court Ordered (DE 147, AEV) Joffe on July 30, 2008, to submit a "statement . . . explaining with sufficient detail, why counsel should be entitled to 547 hours of document review." Joffe responded on August 4, 2008.[1] This matter is now ripe for review.

## BACKGROUND

The Defendant was charged by indictment (DE 3) on April 27, 2007 with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, eleven counts of mail

---

[1] Joffe's response is attached to this Report and Recommendation.

fraud, in violation of 18 U.S.C. §§ 1341 and 2, two counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, one count of promotion money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(I) and 2, and three counts of expenditure money laundering, in violation of 18 U.S.C. §§ 1957 and 2. The Court found the Defendant indigent and ordered CJA counsel to be appointed (DE 25). Joffe was appointed as Defendant's CJA counsel (DE 31) on May 18, 2007.

The indictment alleged Defendant to be the President of a Florida corporation called Starcash (DE 3). Starcash was alleged to have raised approximately $8.2 million from investors to fund short-term payday loans. During its eight months of operation, from September 2001 to May 2002, Starcash defrauded 600 investors (DE 3). Defendant's payday advance loan business scheme involved making numerous false statements and omissions of material facts to lure individuals to invest in Starcash. Investors were told that Starcash was the owner of current and future "accounts receivable" that represent payday advances made by Starcash to the general public. Investors were also told that they were "factors" charging Starcash 2%-3% (or 42% annually) for the use of their funds (DE 3). The business scheme was promoted to investors with the assurance that investor funds would be used to fund the payday loans, and, that investor funds would be held in a "trust" account. Only a small portion of the funds were used to fund payday loan advances. Instead, the funds were used by the Defendants to pay high commissions, and, to fund their expensive lifestyle (DE 3). Starcash opened accounts at 10 financial institutions.

Joffe informed the Court that one of the components of Defendant's payday advance loan business scheme involved the potential placement of kiosks in public places. The kiosks were promoted by Starcash to potential investors as the equivalent of automatic

2

teller machines. Defendants represented to investors that Starcash kiosks were "running successfully" in Canada.

Defendant's boyfriend and co-defendant, Frederick J. Shapiro, pled guilty to the conspiracy charge on July 13, 2007(DE 42). The Court granted Defendant's motion for a psychiatric exam of LeClercq (DE 46) in July 2007. Defense counsel advised the Court that Defendant was emotionally overwhelmed by the instant proceedings. Joffe stated that the Defendant was placed on psychiatric medications which helped the Defendant focus on aiding her defense. Through the course of the litigation, Defendant moved for investigator fees, copy costs, forensic account fees, and, to exceed the CJA cap for attorney fees. The docket reveals that in September 2007, the Court acknowledged that defense counsel "is awaiting completion of copying 60,000 items to CD" (DE 64). In October 2007, Defendant moved for a bond reduction (DE 70). This issue was vigorously litigated by the parties. The Court denied Defendant's request in December 2007 (DE 88). Another issue vigorously litigated by the parties involved Defendant's motion to compel discoverable materials (DE 71). Defendant's motion asked the Court to compel the Government to turn over documents created during the litigation of the Securities and Exchange Commission against LeClercq and the defunct payday advance loan business. Defendant's motion to compel was referred to this Court by District Judge Kenneth A. Marra (DE 74). This Court denied Defendant's motion to compel on November 9, 2007 (DE 81). Defendant appealed this decision to the District Court (DE 83). District Judge Kenneth A. Marra affirmed this Court's decision on December 13, 2007 (DE 89).

On February 1, 2008, the Defendant pled guilty to conspiracy to commit wire fraud, and one count of wire fraud (DE 94). At Defendant's request, the Court appointed a defense psychologist on February 2, 2008 (DE 98). Defendant objected to the

3

PreSentence Investigation Report on April 1, 2008 (DE 100). The Defendant was sentenced to ninety-six months imprisonment followed by a three-year term of supervised release.

## DISCUSSION

The issue before the Court is the appropriateness of defense counsel's CJA voucher for attorney's fees in this case. Joffe filed the instant voucher (FLS 07 1688) on April 18, 2008, with appended time sheets requesting $62,422.99 as final payment for attorney's fees and costs pursuant to his appointment as Defendant's CJA counsel.

The CJA directs federal courts to "fix the compensation and reimbursement to be paid to the attorney representing an indigent defendant in a criminal case." 18 U.S.C. § 3006A(d)(5). The CJA provides that an appointed attorney, at the conclusion of a CJA representation, shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed for "expenses reasonably incurred." 18 U.S.C. §3006A(d)(1). The statutory authority and discretion to determine what is a reasonable amount of billable time or expense rests with the District Court. 18 U.S.C. §3006A(d)(5); United States v. Griggs, 240 F.3d 974 (11th Cir. 2001). By statute, the maximum amount of fees a CJA attorney may recover is $ 7,000 absent a finding that the representation was extended or complex. 18 U.S.C. §3006A(d). A case is complex where the "legal or factual issues . . . are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Vol. 7, Guide to Judiciary Policies and Procedures, Sec. A, Ch. 2, Part C § 2.22B(3). A case is extended where "more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings." Id.

4

A district court's determination of a reasonable fee pursuant to the CJA is an administrative order, not a judicial order, and therefore not a final decision for purposes of supporting appellate jurisdiction. United States v. Rodriguez, 833 F.2d 1536, 1538 (11th Cir. 1987); United States v. Griggs, 240 F.3d 974 (11th Cir. 2001). District Courts are vested with discretion to set CJA fee determinations. Griggs, 240 F.3d 974. "With regard to CJA court appointed cases, the courts have an inherent obligation to make sure that claims for taxpayer provided monies are justified." United States v. Fedor, 2008 WL 2264556, 4 (S.D. Fla. 2008)(quoting United States v. Smith, 76 F. Supp.2d 767, 768 (S.D. Tex. 1999). Additionally, the CJA "does not require a court to hold adversary hearings on fee awards." Id.

The Court's CJA administrator reviewed Joffe's voucher for compliance with CJA guidelines and mathematical accuracy in June 2008. Minor adjustments to how the hours were broken down were made by the administrator. No change in the total amount was made. The voucher claims 4.0 hours of in court time, 46.1 hours of interview and conference time, 547.2 hours obtaining and reviewing records, 6.1 hours of legal research and writing, 24 hours of travel time, and 18.5 hours of investigative and other work. Additionally, the voucher seeks reimbursement of $507.19 for travel expenses, and $212.20 for expert and transcript fees. This Court reviewed the entire CJA voucher, the time sheets submitted, and the case record. Additionally, the Court is familiar with the case since it handled certain pretrial motions.

In the present case, United States District Judge Kenneth A. Marra granted Defendant's request to exceed the statutory cap of the CJA on the grounds that the instant case is both "complex" and "extended" (DE 80). In an abundance of caution, this Court recounts for the record the factors which support a finding that the case is "complex" and

5

"extended." This case is extended because it required more time to process and resolve than the average case. Joffe represented the Defendant from May 2007 through May 2008. Joffe states that this case is legally complex because it involved a payday advance loan business which can be legally operated, if properly created, adequately capitalized, and correctly managed.[2] Joffe stated that he expended time educating himself about the legal considerations attendant to the payday advance business. This analysis was factually complex, Joffe states, because it involved Defendant's payday advance business in the United States and Canada. According to Joffe, Defendant maintained that Starcash was legally and successfully operating in Canada under the direction of her sister. Joffe stated that the Government's potential ability to use the Canadian business operation as proof of Defendant's illegal acts, or, as 404(b) evidence of Defendant's illegal conduct posed a complicated legal and factual issue for trial.

The Court certifies pursuant to 18 U.S.C. § 3006A(d)(3) that this case is legally "complex" due to the number of counts with which Defendant LeClercq was charged, the complicated evidence, and the intertwined and intricate documentation involved in the scheme. The Court certifies that this case is "extended" due to the duration of Joffe's representation, the quantity and nature of the charged offenses, and the voluminous discovery involved.

After review of the billing records provided, the case record, and, upon consideration of the information Joffe offered in his support of his voucher, this Court finds Joffe's

---

[2] Joffe further explained that Defendant's "other" legal problems added another layer of involvement to Joffe's task. Defendant faced potential criminal charges in the Middle District of Florida for bankruptcy fraud. Additionally, a violation of probation petition was pending against Defendant. Joffe stated that he was able to keep Defendant's "other" legal entanglements "out of this case" such as Defendant's alleged role as a "Madam" running a "scrub shop" and her involvement in an allegedly illegal plastic surgery scheme.

voucher justified and reasonable as to the following charges:

> (1)    in court time (4.0 hours),
>
> (2)    interview and conference time (46.1 hours),
>
> (3)    legal research and writing (6.1 hours),
>
> (4)    investigative hours (18.5 hours),
>
> (5)    travel time (24 hours),
>
> (6)    travel expenses ($507.19), and
>
> (7)    expert and transcript fees ($ 212.20).

As to the 547.2 hours of document review time, this Court has reviewed the voucher, the time sheets submitted, the case record, and the information and letter counsel provided in support of his time. The Court commends counsel for his vigorous, diligent, and zealous advocacy of Defendant LeClercq under difficult circumstances. In the spirit of cooperation with the Court, and, as part of his service as a member of the Southern District of Florida's ("District") CJA panel, attorney Joffe has stated that he agrees to a voluntary fee reduction of 10% in this matter. The Court appreciates Joffe's professionalism, and willingness to cooperate in this inquiry. The Court is satisfied that Joffe documented his actual time spent performing document review, and, that counsel's efforts on behalf of his client were made in good faith and are entirely commendable. "What is commendable, however, is not necessarily compensable." Smith, 76 F.Supp. 2d at 769. The Courts have an inherent obligation in CJA cases to make sure that claims for taxpayer provided monies are justified. Id. at 768.

The Court finds that 547.2 hours of document review time for representation of Defendant LeClercq in this matter is not reasonable pursuant to the CJA. Joffe's document

review time fee totals $ 52, 322.80 as submitted.[3]  This case involved a business scheme that was active for less than 1 year. While the record reflects that 60,000 documents were involved in the case, the scheme itself, by counsel's own admission, involved at best 600 victims. Joffe explained to the Court that the vehicle used by the Defendant to defraud the victims, Private Placement Memo's (PPM's), were essentially the same except for progressive changes made to the document over time by the Defendants. This case did not proceed to trial. Only cursory forensic accounting review was completed. Accordingly, the Court finds counsel's request for 547.2 hours of document review excessive.

Having found counsel's document review time excessive, the Court now turns to the difficult task of calculating a fee for document review in this case that provides fair compensation to counsel. In determining what constitutes fair compensation, the Court has considered the factors enumerated in the Guidelines for the Administration of the CJA , the information provided by counsel in support of the document review time, the CJA voucher, the case file, and counsel's time sheets. Additionally, the Court extensively reviewed recent (2007 and 2008) CJA fee determinations in this District.[4]  Fee determinations are administrative orders, not judicial orders. Rodriguez, 833 F.2d at 1538. Although each individual fee determination involves a specific examination of the facts and circumstances of a particular case, each is a part of the fabric of this District's administration of the CJA plan. Applying these factors, the Court finds that 100 hours of document review is

---

[3]     Pursuant to the CJA voucher reviewed by the Court's CJA administrator, 1 hour of the document review time was posted at $92.00, the 2007 CJA rate of $94.00 per hour was applied to 398.2 hours, and the 2008 CJA rate of $100.00 per hour was applied to 148 hours ($92.00+$37,430.00+$14,800=$52,322.80).

[4]     The Court acknowledges with appreciation the support of United States Magistrate Judge Peter Palermo in this task. Judge Palermo has handled over 50 CJA fee determinations in this District.

8

reasonable and fair in this case. The Court finds 100 hours of document review time in this case consistent with the District's fee determinations. For example, a recent fee recommendation by United States Magistrate Judge Peter R. Palermo, that was adopted by United States District Judge Patricia Seitz, found that document review time of 110 hours was"reasonable." United States v. Menendez, 2007 WL 3197687 (S.D. Fla. October 2007). Menendez is similar to Defendant's case in that it involved a complex and extended scheme to defraud investors through a payphone business opportunity. Id at 2. Menendez involved 5 defendants and an indictment charging 33 counts. Id. Defense counsel in that case represented a defendant charged in 8 counts. Id. In Menendez, defense counsel expended 110 hours of document review time to review 250,000 relevant documents. Id at 3. Trial in Menendez involved 11 trial days. Id at 2. Menendez was acquitted. Id.

Here, the Court finds 100 hours of document review a reasonable charge by Joffe even though the litigation of this case is distinguishable from Menendez because this case was resolved by plea (Menendez involved a 12 day trial), and, because this case involved significantly fewer relevant documents (Menendez involved 240,000 relevant documents - this case involved only 60,000 items). Each fee determination is an individual inquiry based on the nature and circumstances of the case. Here, 100 hours of document review time is reasonable and justified because of the number of documents involved, the Defendant's inability to aid counsel in the document review process due to her state of mind, and, because Defendant was adamant to proceed to trial. The Court reiterates that while Joffe's document review efforts are commendable, "[w]hat is commendable . . . is not necessarily compensable." Smith, 76 F.Supp. 2d at 769. The Court finds that 100 hours of document review time is reasonable and justified in this case.

According to the CJA voucher and Joffe's time sheets supporting the voucher,

Joffe's document review time was broken down into 399.2 hours in 2007 and 148 hours in 2008.[5] The applicable CJA reimbursement rate in 2007 is $ 94.00 per hour. The applicable CJA reimbursement rate in 2008 is $100.00 per hour. Approximately 73% of Joffe's document review time in this case was expended in year 2007. The Court finds it fair and reasonable to allocate the 100 hours of document review time, set by the Court, to mirror Joffe's 2007 and 2008 efforts. Hence, the Court finds the 2007 rate of $94.00 per hour applies to 73 hours, and the 2008 rate of $100.00 applies to 27 hours of document review time. Therefore, the total reimbursement for 100 hours of document review time in this case is $9,562.00 (73 hours at $94.00 = $6,862.00 + 27 hours at $100.00 = $2,700.00).

## RECOMMENDATION

Based upon the foregoing, this Court RECOMMENDS to the District Court that David Joffe's CJA request for $52,322.80 for 547.2 hours of document review in this case be reduced to 100 hours of document review, and that counsel be paid a total of $9,562.00 for this time. This Court RECOMMENDS that the remainder of Joffe's CJA voucher for in-court services, interviews/conferences, legal research and writing, travel time, investigative and other work, travel expenses and other expenses, totaling $10,120.19 be approved as shown on the voucher. This Court RECOMMENDS that the resulting total due to Joffe for CJA voucher FLS 07 1688, dated April 18, 2008, representing final payment for attorney's fees and costs in this matter be reduced to $19,682.19.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth A. Marra, within

---

[5] The CJA voucher as reviewed by the Court's CJA administrator shows 1 hour of the 2007 document review time with a $92.00 per hour rate, and 398.2 hours at the $94.00 per hour rate, for a total of 399.2 hours in 2007.

ten (10) days after being served with a copy. 28 U.S.C. § 636(b)(1)(c). Failure to file timely

objections may limit the scope of appellate review of factual findings contained herein.

United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087

(1983).

DONE and RECOMMENDED in Chambers at West Palm Beach in the Southern

District of Florida, this $\partial O$ day of August 2008.

ANN E. VITUNAC
United States Magistrate Judge

Copies to:
Honorable Kenneth A. Marra
All counsel of record

# Joffe & Joffe, P.A.

David J. Joffe, Esq.

One East Broward Blvd.                                    Tel:  (954) 723-0007
Suite 700                                                        Fax:  (954) 723-0033
Fort Lauderdale, Florida  33301                     e-mail: davidjjoffe@aol.com

August 4, 2008

*VIA FACSIMILE* 
   and
*VIA E-MAIL*

Honorable Ann E. Vitunac
United States Magistrate Judge
701 Clematis Street
West Palm Beach, Florida  33401

      Re:    United States of America v. Jeanne B. Leclercq
            Case No. 07-80050-CR-MARRA/VITUNAC

Dear Judge Vitunac:

      This letter is in response to the Order dated July 30, 2008, requesting undersigned counsel to respond in writing to determine the appropriateness of attorney's fees requested by undersigned counsel pursuant to the Criminal Justice Act for counsel's representation of Defendant, Jeanne B. Leclercq.

      This case was a complex and extended securities fraud case involving the payday loan advance business.  This was an atypical securities fraud case in that it involved the payday loan advance business.  Leclercq had entered into business with indicted and unindicted co-conspirators to compete for the potentially lucrative payday loan advance business for which there already exists a national company that holds the majority of said business.  Several unique factors existed in the business.  One of those factors pertained to employment of Leclercq's family members who were actively engaged in the business.  The family members opened a payday loan advance business for Leclercq in Canada.  The ultimate goal of the payday loan business was to use a "kiosk" machine, similar to an ATM machine, that would be placed in hundreds of locations in order to facilitate the payment of and payback of payday loans.

      What was unusual was that the business in Canada had no regulatory problems in Canada and in fact Canadian officials welcomed the business in their Country.  Undersigned counsel wanted to know why the business worked in Canada, but not in the United States.

Honorable Ann E. Vitunac
August 4, 2008
Page two

Undersigned counsel met with Leclercq on numerous occasions. Leclercq was of no help to undersigned counsel in either assisting or in preparing this case for trial. Leclercq's stated purpose was to go to trial because she was "innocent" and did not intend to commit fraud upon anyone. Leclercq's position was that she received direction and instruction from co-defendants, indicted and unindicted, one being her boyfriend who had been licensed as a securities broker in the past. Leclercq had been given legal advice by an attorney who has since been disbarred whose name appears in other securities fraud cases currently under indictment in the Southern District of Florida. Leclercq blamed the attorney for her lack of forthrightness in the private placement memorandums as well as disclosures made on the website for the business. Leclercq had made factual misstatements as well as factual omissions, but was consistently adamant that those factual misstatements and/or omissions were of no consequence since she was relying upon the advice of counsel.

On each and every one of counsel's visits with Leclercq, including the initial meeting with Assistant United States Attorney Carolyn Bell and case agents, Leclercq would cry excessively and wring her hands, proclaim her innocence and plead that she had no intent to defraud anyone whatsoever. Undersigned counsel attempted to review specific information documents with Leclercq, but again Leclercq was of no assistance to undersigned counsel.

Undersigned counsel traveled to the Federal Bureau of Investigation's office off of 163rd Street behind the Mercedes Benz dealership in Miami, Florida. Undersigned counsel walked into a room packed with banker's boxes full of material that had been seized pursuant to search warrants executed on Leclercq and/or the business. During undersigned counsel's initial review of said material, undersigned counsel discovered two large binders, approximately six inches thick each, that had been produced by the "Receiver" that has been involved in the Securities and Exchange Commission's investigation of Leclercq and the business. These documents appeared to list all investors that had been "defrauded" and others including numerical amounts and other relevant data. Undersigned counsel requested that the government provide said material to undersigned counsel. Undersigned counsel was advised by the government that said material was the "work product" of the Receiver and that the United States Attorney's Office had no authority to disclose said material to undersigned counsel.

Undersigned counsel litigated the issue of the provision of said Receiver's materials to no avail. Undersigned counsel had advised the District Court that provision of said materials would ultimately save CJA costs as undersigned counsel would bill substantially less hours in his review of said discovery. It was the position of the government that said material had in fact been provided to undersigned counsel in the numerous boxes of discovery provided to undersigned counsel. It should be noted that said discovery was provided to undersigned counsel in a disorganized fashion, *i.e.* the material was basically copied and placed in the boxes in an un-indexed, un-bate stamped fashion. Undersigned counsel was forced at the outset to go through said

Honorable Ann E. Vitunac
August 4, 2008
Page three

boxes and organize said material into a semi-relevant fashion even prior to undersigned counsel reviewing said material. This required even more time on undersigned counsel's part.

Material in the boxes of discovery that had been copied and delivered by the copy service in Weston, Florida consisted of private placement memorandums, canceled checks and material related and non-related to Leclercq's business. Unfortunately for undersigned counsel, undersigned counsel was required to go through and parcel out material that was not relevant to Leclercq's case.

Undersigned counsel was desirous of discovering material and/or documents that would have assisted undersigned counsel in presenting an effective defense for Leclercq, arguing in part that the business was in fact "legal" in Canada and therefore should not have had issues in the United States since the business had been singled out because of certain small and/or irrelevant issues that had arisen during the course of said business.

Undersigned counsel has listed the hours spent in his review of said discovery in his initial billing. Additionally, undersigned counsel has explained said hours spent to the Honorable Magistrate Judge Ann E. Vitunac. Additionally, undersigned counsel has advised this Honorable Court that he is willing to accept a voluntary ten percent (10%) reduction in the overall gross total of said CJA billing in order to assist the Court in payment of this voucher.

Should this Court require any further information, undersigned counsel stands ready to provide said information.

Respectfully yours,

DAVID I. JOFFE

DJJ:ja